**PRO SE INCARCERATED LITIGANT — MAILED FROM CUSTODY**

*Pursuant to Houston v. Lack, 487 U.S. 266 (1988), this filing is deemed filed on the date delivered to prison officials for mailing.*

*Plaintiff respectfully requests liberal construction. Haines v. Kerner, 404 U.S. 519 (1972).*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**GALVESTON DIVISION**

United States Courts
Southern District of Texas
FILED

APR 17 2026

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| ANDREW J. MITCHELL, individually and d/b/a MITCHELL ADJUSTING INTERNATIONAL LLC,<br><br>Plaintiff,<br><br>v.<br><br>PEARL DELTA FUNDING, LLC d/b/a PEARL CAPITAL;<br><br>SOLOMON LAX, individually and as Chief Executive Officer of Pearl Delta Funding, LLC d/b/a Pearl Capital; and JOHN DOES 1–10,<br><br>Defendants. | Civil Action No.:<br><br>_____<br><br>Judge:<br><br>_____<br><br>Magistrate Judge:<br><br>_____<br><br>**JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT AND PETITION FOR DAMAGES AND INJUNCTIVE RELIEF**

*(Civil RICO — 18 U.S.C. §§ 1961–1968 | Wire Fraud — 18 U.S.C. § 1343 | Breach of Contract | Fraudulent Inducement | Conversion | Unjust Enrichment | Texas Finance Code Violations)*

## I. PRELIMINARY STATEMENT

Plaintiff Andrew J. Mitchell, owner and operator of Mitchell Adjusting International LLC ("MAI"), brings this action against Pearl Delta Funding, LLC d/b/a Pearl Capital ("Pearl Capital"), Solomon Lax individually and as Chief Executive Officer, and John Does 1–10 for a predatory merchant cash advance scheme in which Pearl Capital originated a January 2021 MCA agreement and subsequently induced Plaintiff into a June 2021 renewal carrying a significantly higher fixed daily repayment obligation that Pearl Capital and Lax knew — based on continuous ACH access to MAI's account and MAI's deposit history — would compound the multi-lender cash burden on MAI's account and eventually exceed MAI's ability to maintain sufficient liquidity for policyholder trust fund disbursements.

From January 2021 through December 2021, Pearl Capital extracted a total of approximately

$604,000 net from MAI's JPMorgan Chase business account — confirmed by certified bank statements — against combined advances of approximately $455,680. Pearl Capital's original January 2021 agreement called for an $1,800/day repayment. Its June 2021 renewal, funded with a $315,200 advance, more than doubled the daily extraction rate to $3,650/day — a 102.8% increase — which ran concurrently with simultaneous MCA obligations from Vitalcap Fund, Last Chance Fund, Westwoodfundings, and Lionheart Funding. The combined multi-lender burden reached $29,098.94 per business day by November 2021, consuming 61.8% of that month's total deposits.

Plaintiff seeks RICO treble damages, compensatory damages, punitive damages, injunctive relief, and attorney's fees.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) because this action arises under 18 U.S.C. §§ 1961–1968 (Civil RICO) and 18 U.S.C. § 1343 (Wire Fraud). This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) — Plaintiff is a Texas citizen, Defendants are New York and New Jersey citizens, and the amount in controversy exceeds $75,000. Supplemental jurisdiction over state law claims exists under 28 U.S.C. § 1367(a).

Venue is proper in the Southern District of Texas, Galveston Division, under 28 U.S.C. § 1391(b)(2) because: (a) Plaintiff resided and operated MAI at 1500 Marina Bay Drive, Bldg. 122, Kemah, TX 77565 — Galveston County — the address listed on Pearl Capital's own MCA agreement; (b) all financial injuries occurred in Galveston County, Texas; (c) Defendant directed every ACH debit at a Texas bank account belonging to a Texas business at a Galveston County address; and (d) any forum selection clause in the MCA agreement is unenforceable as to federal RICO claims. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614 (1985).

### NOTICE OF RELATED CASES

The following ten cases are currently pending in this Division arising from the same operative facts, the same MAI business account, and the same hurricane-claim adjusting enterprise, and are related within the meaning of Local Rule 3.2:

| Case No. | Case Title |
| --- | --- |
| 3:26-CV-87 | Mitchell v. State Farm Fire & Casualty Co. |
| 3:26-CV-88 | Mitchell v. Allstate Insurance Company |
| 3:26-CV-89 | Mitchell v. GeoVera Specialty Insurance Co. |
| 3:26-CV-90 | Mitchell v. Client AR Joinder (209 defendants) |
| 3:26-CV-92 | Mitchell v. McClenny & Moseley, Individually |
| 3:26-CV-93 | Mitchell v. Chad T. Wilson Law Firm PLLC |
| 3:26-CV-95 | Mitchell v. Pandit Law Firm LLC |
| 3:26-CV-96 | Mitchell v. Lionheart Funding LLC et al. |
| 3:26-CV-97 | Mitchell v. LCF Group LLC |
| 3:26-CV-99 | Mitchell v. PMC Funding 2021 LLC |

Plaintiff respectfully requests that this action be assigned to the same judge presiding over the above-related cases.

## III. PARTIES

**A. Plaintiff.** Andrew J. Mitchell is the owner and sole member of Mitchell Adjusting International LLC (EIN: 85-0531670; business address: 1500 Marina Bay Drive, Bldg. 122, Kemah, TX 77565), a Texas-based licensed public adjusting firm. Plaintiff held Louisiana Public Adjuster License No. 576993 and Texas public adjuster licensure during all relevant periods. Plaintiff is currently incarcerated at Jackson Parish Correctional Center, 1828 Gansville Road, Jonesboro, Louisiana 71251, and proceeds pro se. Pursuant to Houston v. Lack, 487 U.S. 266 (1988), this Complaint is deemed filed as of the date delivered to prison officials for mailing.

**B. Defendant Pearl Delta Funding, LLC d/b/a Pearl Capital** is a New York limited liability company with its principal place of business at 545 Fifth Avenue, New York, NY 10017. Pearl Capital operates as a merchant cash advance funder, used ACH Originator ID J854055959 and individual IDs 5058462 and 5059287 to execute all debits documented herein, and directed all actionable conduct into Texas. Defendant is subject to personal jurisdiction in this District.

**C. Defendant Solomon Lax** is an individual residing, upon information and belief, in the State of New Jersey, and at all relevant times served as the Chief Executive Officer of Pearl Delta Funding, LLC d/b/a Pearl Capital, a position he has held since 2015. Lax personally directed, controlled, and authorized the MCA origination, renewal, and ACH extraction scheme described herein, made or authorized the material misrepresentations transmitted to Plaintiff by wire, and personally participated in and oversaw the pattern of racketeering activity alleged in this Complaint. Lax is named individually and is subject to personal jurisdiction in this District based on his tortious conduct directed at Texas.

**D. John Does 1–10** are unknown individuals who acted as principals, agents, ACH processors, underwriters, or co-conspirators of Defendants. Their identities will be obtained through discovery.

## IV. FACTUAL BACKGROUND

### A. MAI's Public Adjusting Business and Fiduciary Obligations.

MAI was a licensed and active public adjusting firm that by 2021 held signed Notices of Assignment, public adjuster contracts, and negotiated insurance settlement agreements representing accounts receivable in excess of $4.2 million from hurricane damage claims arising from Hurricanes Laura, Delta, and Ida. MAI's JPMorgan Chase business account (Account No. 000000630399605, Routing No. 111000614) regularly received deposits ranging from $684,000 to $1,684,000 per month during 2021. As a licensed public adjuster, MAI received insurance settlement funds in a fiduciary capacity. Pearl Capital's ACH extractions drew from the same account holding those trust funds without any mechanism to distinguish between them.

### B. The January 2021 Original MCA Agreement.

On or about January 15, 2021, Pearl Capital presented a Revenue Purchase Agreement ("RPA") to MAI stating a Purchase Price of $144,000.00, a Purchased Amount of $216,000.00, a Purchased Percentage of 8% of daily receivables, and a daily Remittance of $1,800.00. Pearl Capital funded $139,680.00 (net of a $4,320 underwriting fee) into MAI's Chase account on

January 28, 2021 under Orig ID: J854055959, Ind ID: 5058462. The first repayment debit of $1,800.00 occurred January 29, 2021. This $1,800/day rate continued through June 14, 2021. By June 14, 2021, Pearl Capital had collected approximately $136,800.00 against a net advance of $139,680.00 — recovering approximately 97.9% of the funded amount before the renewal.

**C. The June 2021 Renewal — New Advance, Higher Daily Rate.**

On June 11, 2021, Pearl Delta Funding LLC wired $315,200.00 directly into MAI's Chase account. On June 15, 2021, a $46,800.00 payoff wire was sent to Pearl Delta Funding LLC, satisfying the remaining balance of the January 2021 agreement. Simultaneously on June 15, 2021, Pearl Capital began debiting the account under a new ACH Ind ID: 5059287 at $3,650.00 per business day — a 102.8% increase over the prior $1,800/day rate. This sequence is the hallmark of an MCA renewal. The claims herein arise from the renewal's fixed daily structure, the failure to implement any genuine receivables-based reconciliation, and the compounding burden the renewal created when combined with MAI's simultaneous MCA obligations from other lenders.

**D. Monthly Extraction Data — Certified Bank Records.**

| Month | Pearl Total | Total Deposits | % Dep. | Notes |
|---|---|---|---|---|
| Jan. 2021 | $1,800.00 | $684,499.05 | 0.3% | Initial advance $139,680 funded 01/28; first debit 01/29 |
| Feb/Mar 2021 | $41,400.00 | $690,813.23 | 6.0% | $1,800.00/day — Ind ID: 5058462 |
| April 2021 | $39,600.00 | $1,201,630.44 | 3.3% | $1,800.00/day — Ind ID: 5058462 |
| May 2021 | $36,000.00 | $984,085.01 | 3.7% | $1,800.00/day — Ind ID: 5058462 |
| June 2021 | $76,400.00 | $1,684,283.76 | 4.5% | Phase 1: $1,800/day; Renewal 06/11; Phase 2: $3,650/day from 06/15 |
| July 2021 | $76,650.00 | $735,356.39 | 10.4% | $3,650.00/day — Ind ID: 5059287 — Renewal rate |
| Aug. 2021 | $83,950.00 | $953,806.41 | 8.8% | $3,650.00/day — Ind ID: 5059287 |
| Sept. 2021 | $76,650.00 | $1,010,042.61 | 7.6% | $3,650.00/day — Ind ID: 5059287 |
| Oct. 2021 | $73,000.00 | $1,356,724.77 | 5.4% | $3,650.00/day — Ind ID: 5059287 |
| Nov. 2021 | $73,000.00 | $905,847.53 | 8.1% | $3,650.00/day — 61.8% total deposits consumed by all MCAs |
| Dec. 2021 | $25,550.00 | $1,501,639.32 | 1.7% | $3,650/day (8 debits 12/01–12/10); paid off 12/10; $3,650 refund 12/15 |
| TOTAL (Net) | $604,000.00 | — | — | Against combined advances of ~$455,680 |

**E. The Cash Crunch and Policyholder Fund Disruption.**

Pearl Capital's renewal at $3,650/day ran concurrently with an escalating multi-lender extraction environment. By November 2021, four MCA lenders — Pearl Capital, Vitalcap Fund ($8,816.33/day), Last Chance Fund ($12,250/day), and Westwoodfundings ($4,382.61/day) — were simultaneously debiting the account with a combined daily burden of approximately

$29,098.94 per business day, consuming 61.8% of November's total deposits. Pearl Capital, under Solomon Lax's direction, had continuous ACH visibility into MAI's account activity and knew at the time of the June 2021 renewal that the fixed $3,650/day rate would compound the existing multi-lender burden beyond MAI's sustainable repayment capacity.

**F. The Purchased Percentage Versus Fixed Rate Mismatch.**

The January 2021 RPA stated a Purchased Percentage of 8% of daily receivables. At MAI's average monthly deposit volumes during 2021, an honest 8% daily application would produce variable daily collections between approximately $247 and $614 per day. Pearl Capital instead debited $1,800/day (original) and $3,650/day (renewal) regardless of actual daily receipts — rates that bore no proportional relationship to the stated 8% Purchased Percentage on low-deposit days. Davis v. Richmond Capital Group LLC, 194 A.D.3d 516 (1st Dep't 2021); Fleetwood Services, LLC v. Ram Capital Funding LLC, 2022 WL 1997207 (S.D.N.Y. 2022).

## V. RICO ALLEGATIONS — 18 U.S.C. §§ 1961–1968

**A. The Enterprise.**

Defendant Pearl Delta Funding, LLC d/b/a Pearl Capital, Defendant Solomon Lax, and John Does 1–10 constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Pearl Enterprise"). Lax, as CEO, was the directing mind of the enterprise and personally participated in its affairs through a pattern of racketeering activity.

**B. Pattern of Racketeering Activity — Wire Fraud Predicates.**

The Pearl Enterprise engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) consisting of multiple related predicate acts of wire fraud under 18 U.S.C. § 1343 occurring over a period exceeding one year. Predicate acts include: (1) interstate wire transmissions of MCA agreement and renewal documents containing material misrepresentations; (2) each ACH debit transmitted via interstate wire systems — constituting hundreds of individual wire fraud predicate acts; (3) the June 11, 2021 wire funding of $315,200 and June 15, 2021 payoff wire of $46,800, each transmitted interstate in furtherance of the renewal scheme. Each wire transmission constitutes a separate predicate act. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989).

**C. Individual Liability of Solomon Lax.**

Solomon Lax, as CEO since 2015, personally directed and controlled the MCA enterprise, authorized the deceptive renewal terms transmitted to Plaintiff, supervised the ACH extraction operations, and knowingly participated in and agreed to further the racketeering scheme. Lax is individually liable under 18 U.S.C. § 1962(c) and § 1962(d) for his personal participation in and direction of the enterprise's pattern of racketeering activity.

**D. Causation and Damages.**

Pearl Capital's and Lax's pattern of racketeering activity was the direct and proximate cause of Plaintiff's injuries, including total net extractions from MAI's account of approximately $604,000 (January through December 2021); destruction of MAI's business liquidity; inability to disburse policyholder trust funds; loss of public adjusting licenses; and destruction of MAI's business enterprise. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).

## VI. CAUSES OF ACTION

### COUNT I — CIVIL RICO — 18 U.S.C. § 1962(c)

Plaintiff incorporates all prior paragraphs by reference. Defendants Pearl Delta Funding, LLC d/b/a Pearl Capital and Solomon Lax individually constitute an enterprise within the meaning of 18 U.S.C. § 1961(4), engaged in activities affecting interstate commerce. Each Defendant conducted and participated in the affairs of that enterprise through a pattern of racketeering activity — including hundreds of wire fraud predicate acts — spanning January through December 2021. Plaintiff is entitled to RICO treble damages of not less than $765,900.00 (3 × $255,300 excess extraction), plus costs and attorney's fees under 18 U.S.C. § 1964(c).

### COUNT II — CIVIL RICO CONSPIRACY — 18 U.S.C. § 1962(d)

Plaintiff incorporates all prior paragraphs. Defendants and John Does 1–10 agreed and conspired to violate 18 U.S.C. § 1962(c). Each Defendant, including Solomon Lax individually, knowingly participated in and agreed to further the scheme to induce MCA renewals through deceptive wire communications and impose fixed extraction rates beyond sustainable capacity. The conspiracy proximately caused Plaintiff's injuries.

### COUNT III — BREACH OF CONTRACT

Plaintiff incorporates all prior paragraphs. The January 2021 RPA stated a Purchased Percentage of 8% of actual receivables and included a reconciliation provision (Section 1.4) requiring adjustment of daily debits when actual receipts were insufficient. Pearl Capital materially breached these provisions by: (1) debiting fixed daily amounts regardless of actual receivables deposited; (2) failing to perform any reconciliation under Section 1.4; and (3) structuring the June 2021 renewal to perpetuate the fixed daily extraction structure rather than honor the percentage-based terms.

### COUNT IV — FRAUDULENT INDUCEMENT

Plaintiff incorporates all prior paragraphs. Defendants made material misrepresentations in connection with the original agreement and June 2021 renewal, including: (1) characterizing each transaction as a purchase of receivables when the economic reality was a fixed-rate loan; (2) failing to disclose the true effective interest rate; (3) failing to disclose the combined daily burden from the renewal running concurrently with MAI's existing Vitalcap obligation; and (4) misrepresenting the stated 8% Purchased Percentage as governing the daily extraction when Pearl Capital had no mechanism to honor it.

### COUNT V — CONVERSION

Plaintiff incorporates all prior paragraphs. To the extent Pearl Capital's daily ACH extractions exceeded the amounts permitted under the contracted 8% Purchased Percentage as applied to actual daily receivables, those excess amounts constitute conversion of Plaintiff's property. By extracting funds from an account simultaneously holding policyholder trust funds, Defendants exercised wrongful dominion and control over property in which they had no legal interest. Waisath v. Lack's Stores, Inc., 474 S.W.2d 444 (Tex. 1971).

### COUNT VI — UNJUST ENRICHMENT

Plaintiff incorporates all prior paragraphs. Pearl Capital extracted approximately $604,000 net

from MAI's account against combined advances of approximately $455,680 — a repayment ratio of approximately 132%. Retention of excess amounts above Pearl Capital's legitimate contractual entitlement would be inequitable. Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39 (Tex. 1992).

## COUNT VII — VIOLATIONS OF TEXAS FINANCE CODE

Plaintiff incorporates all prior paragraphs. Defendants violated the Texas Finance Code by: (1) misrepresenting the nature of the transaction to avoid applicable lending regulations; (2) imposing effective interest rates far exceeding legal limits; (3) failing to honor reconciliation obligations; and (4) structuring the June 2021 renewal to compound financial distress. Plaintiff is entitled to statutory damages, attorney's fees, and injunctive relief under Tex. Fin. Code §§ 392.001 et seq.

## VII. DAMAGES

A. Excess extraction above contracted 8% Purchased Percentage: estimated $255,300 (to be confirmed through discovery)

B. Total net extraction above advances received — approximately $148,320 net profit to Pearl Capital: amount to be established at trial

C. Business losses caused by liquidity destruction and inability to disburse policyholder trust funds: amount to be proven at trial

D. Consequential damages from collapse of MAI's business enterprise: amount to be proven at trial

E. Compensatory damages: not less than $255,300.00.

F. RICO treble damages under 18 U.S.C. § 1964(c): not less than $765,900.00.

G. Punitive damages for Defendants' willful and malicious conduct: amount to be determined by the trier of fact.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Andrew J. Mitchell respectfully requests that this Court:

a. Enter judgment for Plaintiff against all Defendants, including Solomon Lax individually, for compensatory damages not less than $255,300.00, plus additional amounts to be proven at trial;

b. Award RICO treble damages of not less than $765,900.00 pursuant to 18 U.S.C. § 1964(c);

c. Award punitive damages in an amount sufficient to punish Defendants' egregious and intentional misconduct;

d. Issue a permanent injunction prohibiting Defendants from further ACH debits, collection efforts, or adverse credit reporting against Plaintiff or MAI;

e. Order an accounting of all funds extracted from all MAI accounts from inception through the present;

f. Award attorney's fees and costs pursuant to 18 U.S.C. § 1964(c) and applicable law;

g. Award pre- and post-judgment interest at the maximum lawful rate; and

h. Grant such other and further relief as this Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable under federal law.

## VERIFICATION UNDER PENALTY OF PERJURY

I, Andrew J. Mitchell, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in this action and the owner and operator of Mitchell Adjusting International LLC; that I have read the foregoing Complaint; and that the factual allegations contained herein are true and correct to the best of my personal knowledge, information, and belief. The bank statement data referenced herein is derived from official JPMorgan Chase Bank, N.A. monthly account statements for Account No. 000000630399605.

Executed on _____ April 9 _____, 2026.

_____

**Andrew J. Mitchell**

Pro Se Plaintiff

Jackson Parish Correctional Center

1828 Gansville Road, Jonesboro, Louisiana 71251

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Complaint will be served on Defendants via United States Marshal Service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), upon issuance of summons by the Clerk of Court.

Defendant Pearl Delta Funding, LLC d/b/a Pearl Capital may be served at its principal place of business: 545 Fifth Avenue, New York, NY 10017.

Defendant Solomon Lax may be served individually at: c/o Pearl Delta Funding, LLC, 545 Fifth Avenue, New York, NY 10017.

_____

Andrew J. Mitchell, Pro Se Plaintiff

Date: _4. 9.26_

United States Courts
Southern District of Texas
FILED

APR 17 2026

Nathan Ochsner, Clerk of Court

Clerk of Court

United States District Court

Southern District of Texas – Galveston Division

601 Rosenberg Street, Suite 411

Galveston, Texas 77550

**Re: Pro Se Filing – Mitchell v. Pearl Delta Funding, LLC d/b/a Pearl Capital et al**

Basis of Jurisdiction: Federal Question – Civil RICO, 18 U.S.C. § 1962; Wire Fraud, 18 U.S.C. § 1343; Breach of Contract; Fraudulent Inducement

Dear Clerk of Court:

Please find enclosed Plaintiff's original filing in the above-captioned civil action against Defendant Pearl Delta Funding, LLC d/b/a Pearl Capital. This filing is submitted pursuant to Houston v. Lack, 487 U.S. 266 (1988), and is deemed filed as of the date delivered to prison officials for mailing. Plaintiff respectfully requests liberal construction of all pro se filings pursuant to Haines v. Kerner, 404 U.S. 519 (1972).

The following documents are enclosed in this filing package:

1. Original Petition / Verified Complaint
2. AO 240 – Application to Proceed In Forma Pauperis
3. Trust Account Statement / Certified Indigency Statement from Jackson Parish Correctional Center
4. JS-44 – Civil Cover Sheet
5. AO 440 – Summons in a Civil Action (1 copy)
6. Service Information Sheet
7. USM-285 – Process Receipt and Return (U.S. Marshal Service Request)
8. Exhibit List
9. Exhibits (Bank Statement MCA Withdrawal Analyses — January through December 2021)

Plaintiff is incarcerated and indigent and respectfully requests that the Court grant leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 and waive all applicable filing fees. Plaintiff further requests that the Court direct service of process by the United States Marshal Service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), using the enclosed USM-285 form.

Plaintiff respectfully requests that all hearings, conferences, and oral arguments be conducted via videoconference due to Plaintiff's incarceration at Jackson Parish Correctional Center, Jonesboro, Louisiana.

Please assign a case number to this action and return a file-stamped copy of the complaint to Plaintiff's address of record below. Thank you for your time and assistance.

Respectfully submitted,

Andrew J. Mitchell, Pro Se Plaintiff

Jackson Parish Correctional Center

1828 Gansville Road

Jonesboro, Louisiana 71251